UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

STEEL MEDIA GROUP, LLC,

                Plaintiff,

vs.                                              Case No. 1:22-cv-21780-JLK

HAROLD LEWIS, an individual, and
RICHIE BROWNE, an individual,

                Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move for dismissal of the Complaint for failure to state a claim upon which relief can be granted.

## I.    RELEVANT BACKGROUND

The Complaint consists of three counts.  In Count I, Plaintiff asserts a claim for fraud in the inducement.   In Count II, Plaintiff asserts a claim for unjust enrichment.   In Count III, Plaintiff asserts a claim for civil theft.  Plaintiff's claims are based on an alleged oral agreement for the purchase and sale of tickets for the Super Bowl played in Miami on February 2, 2020.

Based on the allegations in the Complaint, the parties made an oral agreement for the purchase and sale of Super Bowl tickets on December 17, 2019.  On that day, Plaintiff alleges that Luiz Rodriguez, "the principal" of Plaintiff, "held a telephone call" with Defendants, Harold Lewis ("Lewis") and Richie Browne ("Browne").  (Complaint ("Com.") ¶ 10).  During this call, Defendants orally promised to sell and deliver to Plaintiff, and Plaintiff orally agreed to buy, 40 Super Bowl tickets located in the "stadium's lower level endzone" for $4,500 per ticket. (*Id.* ¶¶ 9-10).  Defendants also orally promised to procure and sell to Plaintiff additional Super Bowl tickets in the stadium's "lower level" on the condition that Plaintiff perform its part of the agreement by buying the 40 Super Bowl tickets.  (*Id.* ¶¶ 9, 11, 21, 34, 39, 49-51).  Plaintiff

alleges that Defendants made representations concerning their ability to perform the oral agreement by claiming that they "were able to secure" the "unique and valuable" tickets because of Browne's "high position" with Anheuser-Busch and their "contacts" with the NFL. (*Id.* ¶ 12). Based on the allegations in the Complaint, the oral agreement was silent as to the date by which Defendants were to deliver the Super Bowl tickets to Plaintiff.

Plaintiff asserts that it performed its part of the oral agreement by paying Defendants $180,000 for the 40 Super Bowl tickets, with a payment of $50,000 on December 30, 2019 and payments totaling $130,000 between January 9, 2020 and January 21, 2020. (*Id.* ¶ 15). Pursuant to the alleged oral agreement, Plaintiff claims that it then exercised its right to buy additional Super Bowl tickets by paying Defendants $66,500 for 10 additional tickets as of January 24, 2020. (*Id.* ¶ 18). As of January 24, 2020, according to Plaintiff, Defendants were obligated to deliver 50 Super Bowl tickets to Plaintiff as "**promised** by Defendants." (*Id.*) (emphasis added).

Plaintiff asserts that Defendants failed to timely and fully perform their promises under the oral agreement. "As of January 28, 2020," according to Plaintiff, Defendants had not delivered any of the 40 tickets and had only delivered "6 out of the 10 additional" tickets. (*Id.* ¶ 21). Plaintiff alleges that Browne delivered "8 lower level endzone tickets out of the initial 40 requested, and 4 tickets located in another area of the stadium" on January 31, 2020. (*Id.* ¶ 26). Plaintiff claims that Browne delivered "another 6 lower level endzone seats, and 2 seats in another area of the stadium" on February 1, 2020. (*Id.* ¶ 28). Later that same day, according to Plaintiff, Browne delivered an "an additional 16 tickets, 12 of which were lower level endzone tickets and 4 were located in other areas of the stadium." (*Id.* ¶ 29). "Later that same evening," Lewis delivered "2 additional tickets, which were not lower level endzone tickets." (*Id.*).

As of February 1, 2020, according to Plaintiff, Defendants had only delivered 38 out of the 40 tickets as "**promised**," and only 26 of the tickets delivered were for seats in the lower

level endzone as "**promised**." (*Id.* ¶¶ 18, 21, 26, 28-31) (emphasis added).  As of February 1, 2020, according to Plaintiff, Defendants had only delivered 6 out of the 10 additional tickets as "**promised**" and none of the tickets delivered were for seats in the location "**promised**" by Defendants.  (*Id.* ¶¶ 11, 18, 21, 34, 49-51) (emphasis added).

Plaintiff claims that because of Defendants' failure to timely and fully perform their promises under the oral agreement, it "was forced" to cover by making a purchase of goods in substitution by buying "box seating" Super Bowl tickets from the Miami Dolphins for $120,000 on January 29, 2020, by buying "Cabana Suite" Super Bowl tickets from the Miami Dolphins for $180,000 on January 30, 2020, by buying a Super Bowl ticket from a ticket broker for $27,000 on February 2, 2020, and by buying 6 tickets for $70,000 on February 2, 2020.  (*Id.* ¶¶ 22, 23, 32, 33).  Plaintiff further alleges that because of Defendants' failure to perform their promises under the oral agreement, Plaintiff was "sued by a client and was forced to reimburse the customer $40,000 based upon the inability to fulfill such customer's order." (*Id.* ¶ 24).

## II.   ARGUMENT

### A.   MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "A Rule 12(b)(6) motion tests the legal sufficiency of the complaint." *Gilmore v. Day,* 125 F.Supp.2d 468, 471 (M.D. Ala. 2000).

The decisions by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1555 (2007), and *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012).  "To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 129

S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.*

"When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true[.]" *Am. Marine Tech, Inc. v. World Group Yachting, Inc.,* 418 F.Supp.3d 1075, 1079 (S.D. Fla. 2019).  "However, this tenant does not apply to legal conclusions, and courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.  Moreover, "conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *South Florida Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 408 n. 10 (11th Cir. 1996).  Thus, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Salerno v. Florida Southern College,* 488 F.Supp.3d 1211, 1217 (M.D. Fla. 2020).

## B. THE COMPLAINT FAILS TO STATE A FRAUDULENT INDUCEMENT CLAIM

"In order to state a cause of action for fraud in the inducement, a plaintiff must allege that (1) the representor made a misrepresentation of material fact, (2) the representor knew or should have known of the falsity of the statement, (3) the representor intended that the representation would induce another to rely and act on it, and (4) the plaintiff suffered injury in justifiable reliance on the representation." *Biscayne Inv. Grp. Ltd. V. Guarantee Mgmt. Servs., Inc.,* 903 So.2d 251, 255 (Fla. 3d DCA 2005).

### 1. PLAINTIFF'S ALLEGATIONS ARE NOTHING MORE THAN A POTENTIAL BREACH OF CONTRACT CLAIM

Plaintiff alleges that Defendants made representations relating to their ability to perform under the oral contract by claiming they "were able to secure" the "unique and valuable" Super

Bowl tickets because of Browne's "high position" with Anheuser-Busch and their "contacts" with the NFL. (Com. ¶¶ 10-12).  Plaintiff alleges that Defendants' representations relating to their ability to perform were false because "Defendants did not have an NFL contact at all, but rather, were purchasing tickets from [a ticket broker]." (*Id.* ¶ 32).  Thus, according to Plaintiff, Defendants made misrepresentations concerning their performance of the contract by misrepresenting the "strength of their 'contacts' at the NFL," "their ability to procure the most desirable lower level" tickets, and "their ability to procure high volumes of such desirable" tickets." (*Id.* ¶¶ 34, 39).  Plaintiff further asserts that Defendants misrepresented "their intent to in fact supply" the tickets because they never intended to supply the tickets, and, thus, did not intend to perform the contract. (*Id.* ¶¶ 34, 39, 49).

Although Plaintiff attempts to characterize its claim as sounding in fraud, the factual allegations in the Complaint reveal nothing more than a purported breach of an oral contract. Indeed, Plaintiff's true complaint is that Defendants failed to timely and fully perform what they promised to do and, thus, breached the alleged oral contract.  Thus, Plaintiff is claiming that it was damaged not because of Defendants' alleged misrepresentations, but because Defendants breached the alleged oral contract.  Consequently, Plaintiff's fraud claim is indistinguishable from a potential breach of contract claim.

### 2.    PLAINTIFF'S FRAUD CLAIM IS BARRED BY THE STATUTE OF FRAUDS

Although Plaintiff has couched Count I as a claim for fraud in the inducement rather than a claim for breach of contract, Plaintiff's fraud claim is still barred because it attempts to circumvent the bar to a breach of contract claim by Florida's statute of frauds.  Indeed, Plaintiff, under the guise of a fraud claim, is seeking to enforce an oral agreement that is unenforceable under Florida's statute of frauds.  Defendants anticipate that Plaintiff will argue that the statute of frauds is inapplicable because none of the counts in the Complaint are for breach of contract.

This is incorrect.  A claim's label does not determine whether the statute of frauds applies; its substance does.  *See Cohen v. Corbitt,* 135 So.3d 527, 530 (Fla. 1st DCA 2014) ("Appellee cannot avoid the statute of frauds simply by couching her claim in terms of the tort of fraudulent misrepresentation rather than breach of an oral contract.").

In Florida, a contract for the sale of goods worth $500 or more is not enforceable unless it has been memorialized in writing and signed by the party against whom enforcement is sought. *See* FLA. STAT. § 672.201(1). "While the statute [ § 672.201(1) ] by its terms bars recovery in contract, Florida has long recognized that the statutory bar extends to cases where the plaintiff has chosen to plead an essentially contract-based claim as a fraud claim." *Boldstar Tech., LLC v. Home Depot, Inc.,* 517 F.Supp.2d 1286, 1289 (S.D. Fla. 2007).

In the Complaint, Plaintiff claims that the subject matter of the agreement was Super Bowl tickets worth more than $500.  Super Bowl tickets constitute "goods" for purpose of Florida's statute of frauds.  *See* FLA. STAT. § 672.105(1) (" 'Goods' means all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid[.]").  Because Plaintiff claims that the agreement involved the sale of goods worth more than $500, the agreement was within Florida's statute of frauds.  Indeed, Plaintiff's fraud claim requires proving that Defendants promised to sell and deliver Super Bowl tickets (goods) worth more than $500, which brings the claim within the statute of frauds.  *See* FLA. STAT. § 672.201(1).

Although Plaintiff attempts to characterize his claim as sounding in fraud, its factual allegations reveal nothing more than a purported breach of an oral contact.  "It well settled that a party cannot avoid the writing requirement of the statute of frauds by reformulating what amounts to a breach of an oral contract claim into a fraud claim." *940 Lincoln Road Associates, LLC v. 940 Lincoln Road Enterprises, Inc.,* 237 So.3d 1099, 1102 (Fla. 3d DCA 2017).

6

Moreover, even assuming Defendants did not intend to perform their promises under the oral contract as asserted by Plaintiff, (Com. ¶ 34, 39, 49), Plaintiff's fraud claim is still barred by the statute of frauds.  *See LynkUS Commc'ns, Inc. v. WebMD Corp,* 965 So.2d 1161, 1166 (Fla. 2d DCA 2007) ("[U]nder the statute of frauds, an action for damages cannot be maintained on the ground of fraud in refusing to perform the [oral] contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it.").

The Complaint alleges no facts establishing that Defendants' oral promises were reduced to writing and signed by them, let alone facts establishing the existence of a written contract signed by Defendants.  Thus, the alleged oral contract is unenforceable and barred as a matter of law by Florida's statute of frauds.  Therefore, Count I of the Complaint must be dismissed.

If Plaintiff ultimately asserts that an exception to the statue of frauds exists, then Plaintiff is contending there is an enforceable contract.  Under such circumstances, Plaintiff must still satisfy the independent tort doctrine to state a fraudulent inducement claim.

### 3.    PLAINTIFF'S CLAIM IS BARRED BY THE INDEPENDENT TORT DOCTRINE

"[T]o set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort." *Reagan Wireless Corp. v. Apto Solutions, Inc.,* 2018 WL 4901127, at *3 (S.D. Fla. Oct. 9, 2018). Plaintiff's allegations establish that the parties made an oral contract for the purchase and sale of Super Bowl tickets and, thus, are in contractual privity.  Moreover, if Plaintiff asserts that an exception to the statute of frauds applies and thus there is an enforceable contract, then Plaintiff is admitting the parties are in contractual privity.

The independent tort doctrine is well-established in Florida and provides that when "a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach." *Peebles v. Puig,* 223 So.3d 1065, 1069 (Fla. 3d DCA 2017); *see also*

*Island Travel & Tours Co., MYR Ind. Ind.,* 300 So.3d 1236, 1239 (Fla. 3d DCA 2020) ("It is a fundamental long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract.").  Under Florida law, therefore, "it is well settled that a plaintiff a may not recast causes of action that are otherwise breach of contract claims as tort claims." *Cemex Const. Materials, Fla., LLC v. Armstrong World Ind., Inc.,* 2018 WL 905752, at \*10 (M.D. Fla. Feb. 15, 2018).

Even if not barred by the statute of frauds, Plaintiff's fraudulent inducement claim is still barred as a matter of law by the independent tort doctrine for two reasons:  (1) the alleged fraud is not separate from the performance of the contract; and (2) Plaintiff pleads no facts establishing damages independent, separate, and distinct from the contract's alleged breach.

### a.   ALLEGED FRAUD NOT SEPARATE FROM PERFORMANCE OF THE  CONTRACT

("[F]raudulent inducement can qualify as an independent tort[.]" *Certified Collectibles Grp., LLC v. Globant, LLC,* 2021 WL 1214963, at \*4 (M.D. Fla. Mar. 31, 2021).  However, a plaintiff cannot transform a potential breach of contract claim into an independent tort merely by labeling a claim as fraud or fraud in the inducement.  *See Kaye v. Igenio, Filiale De Loto-Quebec, Inc.,* 2014 WL 2215770, at \*4 (S.D. Fla. May 29, 2014) (rejecting fraud claim because "[a]lthough [plaintiff] attempts to characterize his claim as sounding in fraud, the factual allegations reveal nothing more than a purported breach of contract").

Under Florida law, when the alleged fraud concerns a party's performance under the contract, an independent tort will not lie.  *See Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74, 78 (Fla. 3d DCA 1997) ("Misrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement.").  "Put differently, where the alleged fraudulent misrepresentation is inextricably intertwined with

the performance of a contract, there is no cognizable claim sounding in fraud." *Cemex,* 2018 WL 905752, at *11. Thus, "[i]n assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract." *Kaye,* 2014 WL 2215770, at *5; *see also Spears v. SHK Con. & Dev., Inc.,* 338 F.Supp.3d 1272, 1279 (M.D. Fla. 2018) ("The critical inquiry focuses on whether the alleged fraud is separate and apart from the performance of the contract.").

Plaintiff's fraud claim is precisely the type of performance-based claim that cannot stand independent of a potential breach of contract claim. Plaintiff asserts that Defendants made the following misrepresentations to induce Plaintiff to enter into the agreement and buy the Super Bowl tickets: that they "were able to secure" the "unique and valuable" Super Bowl tickets because of Browne's "high position" with Anheuser-Busch and their "contacts" with the NFL. (Com. ¶¶ 10-12). In other words, Plaintiff asserts that Defendants misrepresented the "strength of their 'contacts' at the NFL, "their ability to procure the most desirable lower level Super Bowl tickets," and "their ability to procure high volumes of such desirable" tickets to induce Plaintiff to enter into the agreement and buy the Super Bowl tickets. (*Id.* ¶¶ 34, 39, 41).

As Plaintiff's allegations establish, Plaintiff is claiming that Defendants misrepresented their ability to perform under the contract. Indeed, the **only** alleged misrepresentations simply had to do with Defendants' ability to perform under the contract and, thus, solely relate to Defendants' performance of the contract. Because Defendants' alleged misrepresentations solely relate to their performance of the contract, the misrepresentations are interwoven and indistinct from the heart of the parties' agreement. *See Hotels of Key Largo,* 694 So.2d at 78.

Because Plaintiff's fraud allegations solely concern misrepresentations relating to Defendants' performance of the contract and thus concern the heart of the parties' agreement, Plaintiffs fraudulent inducement claim is barred by the independent tort doctrine. *See*

*Inspirations Nevada, LLC v. Med Pro Billing, Inc.,* 2021 WL 2156677, at *6 (S.D. Fla. May 26, 2021) ("Where the only alleged misrepresentation concerns the heart of the parties' agreement, simply applying the label 'fraudulent inducement' to a cause of action will not suffice to subvert the sound policy underlying the independent tort doctrine."); *Perez v. Scottsdale Ins. Co.,* 2019 WL 5457746, at *3 (S.D. Fla. Oct. 24, 2019) (dismissing fraudulent inducement claim because "the misrepresentations alleged here are in the performance of the contract and cannot be considered independent so as to constitute an exception to [independent tort doctrine]"); *Monsoon, Inc. v. Bizjet Int'l Sales & Support, Inc.,* 2017 WL 747555, at *10 (S.D. Fla. 2017) (dismissing "pre- and post-contract misrepresentation [claims that] relate exclusively to the [d]efendant's performance of the contract" and thus "concern the heart of the parties' agreement"; reasoning that the alleged misrepresentations "cannot therefore be said to give rise to an independent cause of action in tort").

Although Plaintiff alleges that Defendants made misrepresentations to induce Plaintiff enter the agreement and buy the Super Bowl tickets by claiming they "were able to secure" the Super Bowl tickets because of Browne's "high position" with "Anheuser-Busch and their "contacts" with the NFL—when in fact they "did not have an NFL contact at all" and were purchasing tickets from a ticket broker—Plaintiff's true complaint is that Defendants failed to timely and fully perform what they "**promised**" to do and, thus, breached the contract. (Com. ¶¶ 10-12, 18, 21, 31, 32) (emphasis added). Indeed, Plaintiff sets forth expansive, highly detailed factual allegations exhaustively describing the damages it suffered because of Defendants' failure to perform their contractual obligations, including being "forced" to cover by buying substitute Super Bowl tickets for $397,000 and reimbursing a client $40,000 due to Plaintiff's inability to fulfill the customer's order for Super Bowl tickets. (*Id.* ¶¶ 22, 23, 24, 32, 33).

Plaintiff's complaint that Defendants failed to timely and fully perform what they

"**promised**" to do, (*Id.* ¶ 18, 21, 26, 28-31) (emphasis added), and, thus, breached the contract does not give rise to an independent claim of fraud. *See Dorvil v. Nationstar Mortgage, LLC,* 2019 WL 1992932, at *16-17 (S.D. Fla. March 26, 2019) (granting summary judgment on fraud claims because plaintiff "merely complain[s]" about defendant's "alleged failures to perform its obligations" under the contracts; reasoning that plaintiff "may not repackage these breach of contract claims as independent actions in tort"); *Reagan Wireless,* 2018 WL 4901127, at *3 (dismissing fraudulent inducement claim because plaintiff's "true complaint appears" to concern defendant's failure to timely perform its contractual obligations and explaining that "such a claim does not give rise to a claim for an independent claim of fraud").

To the extent that Plaintiff contends that Lewis' alleged representation on January 28, 2020 that Defendants were "exchanging text message regarding the procurement of the tickets through their 'contacts' at the NFL" and Browne's alleged representation on February 1, 2020 that he had 100 tickets that he would make available to Plaintiff, (Com. ¶¶ 20, 27), constitute misrepresentations forming the basis of its fraudulent inducement claim, such a contention is frivolous because the alleged representations were simply that Defendants would perform under the contract. *See Inspirations Nevada,* 2021 WL 2156677, at *6 (finding that plaintiff's fraud claims barred by the independent tort doctrine because "the representations made were simply that [defendant] would perform under the [contract]").

To the extent that Plaintiff contends that Defendants' alleged representation that the Super Bowl tickets they promised to sell were "unique and valuable," (Com. ¶ 12), constitute misrepresentations forming the basis of its fraudulent inducement claim, such a contention is frivolous because such a description of the tickets is non-actionable puffery. *See MDVIP, Inc. v. Beber,* 222 So.3d 555, 561 (Fla. 4tth DCA 2017) ("A promise to deliver an 'exceptional' product or service is a matter of opinion rather than fact and constitutes non-actionable puffery.").

Defendant's conclusory assertion that Defendants misrepresented "their intent to in fact supply" the tickets because Defendants never intended to supply them and thus did not intend to perform the contract, (Com. ¶¶ 12, 34, 39, 49), provides no support for Plaintiff's fraud claim. First, to succeed on a claim for fraud under Florida law, a plaintiff must show that the "promisor had a specific intent not to fulfill his promise at the time the promise was made[,]" *Alexander/Davis Properties, Inc. v. Graham,* 397 So.2d 699, 706 (Fla. 4th DCA 1981).   As discussed more fully below, Plaintiff alleges no facts establishing that Defendants had no intention of performing their promises **when** made.   Second, Defendants' alleged misrepresentation amounts to nothing more than a misrepresentation regarding their intent to comply with the contact and, thus, does not give rise to an independent fraud claim.  *See Topp, Inc. v. Uniden Am. Corp.,* 513 F.Supp.2d 1345, 1349 (S.D. Fla. 2007) ("Ultimately, a claim that a defendant fraudulently induced a party to enter a contract by misrepresenting his intention to abide by the terms of the contract is barred by the economic loss rule.").[1]

Because the alleged misrepresentations are inextricably intertwined with Defendants' performance of the contract, the alleged misrepresentations are inseparable from the essence of the parties' agreement and Plaintiff is limited to pursuing its rights in contract.  *See Inspirations Nevada,* 2021 WL 2156677, at *6 ("[W]here the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the independent tort doctrine applies and the parties are limited to pursuing their rights in contract.").  Indeed, because Plaintiff's fraud allegations solely concern misrepresentations relating to Defendants' performance of the contract, Plaintiff is prohibited from pursuing a "better bargain" by turning a potential breach of

---

[1] *Topp* speaks in terms of the "economic loss rule" because it predates the Florida Supreme Court's decision in *Tiara Condo Ass'n, Inc. v. Marsh & McLennan Cos., Inc.,* 110 So.3d 399 (Fla. 2013), which restricted that rule to the context of products liability.  However, as state and federal courts in Florida have explained, the independent tort doctrine—and the rationale underlying *Topp*—survives *Tiara Condominium* as a long-standing fundamental tenet of contract common law.  *See XP Global, Inc. v. AVM, LP,* 2016 WL 6679427, at *4 (S.D. Fla. Nov. 14, 2016); *Kaye,* 2014 WL 2215770, at *3-5; *Island Travel,* 300 So.3d at 1239; *Peebles,* 233 So.3d at 1069.

contract claim into a fraud claim. *See Certified Collectibles,* 2021 WL 1214963, at *4 (dismissing plaintiff's fraud claim where the alleged fraud was not separate from performance of the contract and explaining that plaintiff was prohibited from "pursuing a 'better bargain' by turning a breach of contract claim into a fraud claim").

To the extent that Defendants failed to comply with what they promised to do under the alleged oral agreement, "such noncompliance must be addressed through a breach of contract claim, not a fraud in the inducement claim." *ADJ 26, LLC v. Gigi,* 2022 WL 255375, at *15-16 (S.D. Fla. Jan. 11, 2022) (collecting cases).

### b.    NO INDEPENDENT, SEPARATE & DISTINCT DAMAGES

"It is [ ] well-settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach." *Peebles* 223 So.3d at 1068. Indeed, the independent tort doctrine "rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law." *Id.*

Plaintiff pleads **no** facts establishing damages independent, separate, and distinct from the contract's alleged breach.  There are no facts in the Complaint demonstrating that Plaintiff suffered any distinct damages separate and apart from the damages it allegedly suffered because of Defendants' failure to perform their contractual obligations.  Indeed, all the damages identified in the Complaint flow from Defendants' purported contract breach and are damages for which remedies are available under contract law.  *See Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So.2d 490, 494 (Fla. 3d DCA 1994) ("Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort.").

Plaintiff's claims that because Defendants failed to timely and fully perform what they

"**promised**" to do under the contract, Plaintiff "was forced" to cover by making a purchase of goods in substitution by buying Super Bowl tickets from the Miami Dolphins and a ticket broker. (Com. ¶¶ 18, 21-23, 31-33) (emphasis added).  Such damages flow from the contract breach and are damages for which remedies are available under contract law.  *See* FLA. STAT. § 672.711(1)(a) ("Where the seller fails to make delivery . . . the buyer may . . . '[c]over' and have damages under the next section as to all the goods affected[.]"); FLA. STAT. § 672.712(1) ("After a beach within the preceding section the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution from those due from the seller.").

Plaintiff's claims that because Defendants failed to timely and fully perform what they "**promised**" to do under the contract, Plaintiff was "forced to" reimburse a client $40,000 due to its inability to fulfill the customer's order for Super Bowl tickets.  (Com. ¶ 18, 21, 24, 31).  Such damages flow from the contract breach and are damages for which remedies are available under contract law.  *See Capital Env. Svcs., Inc. v. Earth Tech, Inc.,* 25 So.3d 593, 595 (Fla. 1st DCA 2009) ("It is well settled that the injured party in a breach of contract is entitled to recover monetary damages that will put him in the same position it would have been had the other party not breached the contract.").

Plaintiff alleges that Defendants had only delivered 38 out of the 40 tickets as "**promised**," and only 26 of the tickets delivered were for seats in the lower level endzone as "**promised**." (Com. ¶¶ 18, 26, 28-31) (emphasis added).  Plaintiff further alleges that Defendants only delivered 6 out of the 10 additional tickets as "**promised**" and that none of the tickets delivered were for seats in the location "**promised**" by Defendants.  (*Id.* ¶¶ 11, 18, 21, 34, 49-51) (emphasis added).  Damages based on Defendants' failure to deliver tickets as promised and failure to deliver tickets for seats in the location as promised (which Defendant deems

undelivered) flow from the contract breach and are damages for which remedies are available under contract law. *See* FLA. STAT. § 672.713(1) ("[T]he measure of damages for nondelivery. . . by the seller is the difference between the market price at the time the buyer learned of the breach and the contract price together with any incidental and consequential damages[.]").

Plaintiff's claims that Defendants' failure to timely and fully perform what they "**promised**" to do under the contract "cause[d] substantial losses in future business opportunities" as Plaintiff "was forced to inform multiple clients that [it] would be unable to fulfill their orders." (Com. ¶ 18, 21, 31, 35) (emphasis added). Such damages flow from the contract breach and are damages for which remedies are available under contract law. *See River Bridge Corp. v. Am. Somax Ven. ex rel. Am. Home Dev. Corp.,* 18 So.3d 648, 650 (Fla. 4th DCA 2009) ("When a party seeks lost future profits upon a breach of contract or other wrong, the party must prove that the lost profits were a direct result of the defendant's actions and that the amount of lost profits can be established with reasonable certainty.").

Plaintiff's claims that Defendants' failure to timely and fully perform what they "**promised**" to do under the contract damaged Plaintiff's "reputation" because it had to tell "multiple clients" that it was unable to "fulfill their orders." (Com. ¶ 18, 21, 31, 35) (emphasis added). Such damages flow from the contract breach and are special damages for which remedies are available under contract law. *See Land Title of Central Fla., LLC v. Jimenez,* 946 So.2d 90, 93 (Fla. 5th DCA 2006) ("Special damages are those that do not necessarily result from the wrong or breach of contract complained of, or which the law does not imply as a result of that injury, even though they might naturally and proximately result from the injury.").

To the extent that a remedy for damage to Plaintiff's "reputation" is unavailable under contract law, then contract principles are still more appropriate for determining remedies for consequential damages because the parties are in contractual privity. *See Indem. Ins. Co. of N.*

*Am. v. Am. Aviation, Inc.,* 891 So.2d 532, 536-37 (Fla. 2004) ("When the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement."). Indeed, to allow a party to turn a breach of contract claim into a fraud claim simply by alleging damage to reputation because of a failure to perform contractual obligations turns the independent tort doctrine on its head. *See Peebles,* 223 So.3d at 1069.

Plaintiff's allegations establish that the damages stemming from Defendants' alleged misrepresentations are not independent, separate, and distinct from the damages sustained from the contract's alleged breach. At the end of the day, Plaintiff was damaged not because of Defendants' alleged misrepresentations, but because Defendants allegedly failed to honor their contractual obligations. *See id.* (finding that directed verdict should have been entered for defendant on plaintiff's fraud claim because "[a]t the end of the day, [plaintiff] was not damaged because of [defendant's] misrepresentations, but because [defendant] failed to honor its contractual obligations"). Because Plaintiff's alleged damages resulted from, and were occasioned by, Defendants' purported breach of contract, and are not independent, separate, and distinct from the damages sustained from the contract's alleged breach, Plaintiff's fraud in the inducement claim is barred as a matter of law by the independent tort doctrine.

### 4.   PLAINTIFF FAILS TO STATE A FRAUDULENT INDUCEMENT CLAIM

A party alleging fraud "must state with particularity the circumstances constituting the fraud[.]" Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s heightened pleading requirements, a complaint must set forth, in relevant part, "the time and place of each statement." *Mizzaro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir. 2008). In violation of Rule 9(b), Plaintiff does not plead when or where the alleged misrepresentations were made. The context of Plaintiff's allegations, however, reflect Defendants made the alleged misrepresentations on

December 17, 2019, the date the parties made the alleged oral contract.  Regardless of the failure to comply with Rule 9(b), the Complaint still does not allege facts establishing a fraud claim.

"As a general rule, fraud cannot be predicated upon a mere promise not performed." *Alexander/Davis,* 397 So.2d at 706.  "However, under certain circumstances, a promise may be actionable as fraud where it can be shown that the promisor had a specific intent not to perform the promise at the time the promise was made, and the other elements of fraud are established." *Id*.  *See also Mejia v. Jurich,* 781 So.2d 1175, 1177 (Fla. 3d DCA 2001) (explaining that a promise of future conduct cannot give rise to a fraudulent inducement claim unless "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform").  "[A] subsequent failure to perform a promise is not evidence that a party had no intent to perform the promise when made." *Quantum Capital, LLC v. Banco de los Trabajadores,* 2015 WL 12259226, at *10 (S.D. Fla. Dec. 22, 2015).

Plaintiff's fraud claim is predicated on Defendants' promises of future performance they allegedly failed to perform.  Plaintiff alleges that on December 17, 2019 Defendants promised to sell and deliver to Plaintiff 40 Super Bowl tickets located in the lower level endzone. (Com. ¶ 10).  Plaintiff also alleges that on December 17, 2019 Defendants promised to procure and sell to Plaintiff additional Super Bowl tickets located in the lower level on the condition that Plaintiff perform its part of the agreement by buying the 40 Super Bowl tickets. (*Id.* ¶ 11, 21, 34, 39, 49-51).  Plaintiff further alleges that once it exercised its right to buy additional tickets by paying Defendants for 10 additional tickets as of January 24, 2020, Defendants were obligated to deliver 50 tickets to Plaintiff as "**promised** by Defendants." (*Id.* ¶ 18) (emphasis added).  In asserting that Defendants misrepresented "their intent to in fact supply" the tickets, Plaintiff claims that Defendants did not intend to perform their promises.  (*Id.* ¶¶ 34, 39, 49).

Plaintiff alleges **no** facts establishing that Defendants had no intention of performing their

promises **when** made.  *See ADJ 26,* 2022 WL 255375, at *15-16 (dismissing fraudulent inducement claim where "the allegations concern promises regarding future actions that [defendants] allegedly did not honor" and plaintiff "failed to show that [defendants] made any such promises with no intention of honoring the promises when made").  Although Plaintiff asserts that Defendants misrepresented "their intent to in fact supply" the tickets, (Com. ¶¶ 12, 34, 39), Plaintiff alleges **no** facts in support of its conclusory assertion.  *See Iqbal,* 129 S.Ct. at 1949 (complaint cannot rest on "naked assertions devoid of further factual enhancement").

At most, Plaintiff merely alleges that Defendants subsequently failed to fully perform their promises, which cannot form the predicate for an actionable fraudulent inducement claim. *See Alexander/Davis,* 397 So.2d at 706.  Indeed, Plaintiff's **only** allegations of fact pertain to Defendants' failure to timely and fully perform what they promised to do, which provide no support Plaintiff's conclusory assertion that Defendants somehow "misrepresented their intent to in fact supply" the tickets.  *See Quantum Capital,* 2015 WL 12259226, at *10.  Thus, Plaintiff alleges **no** facts, other than a subsequent failure to perform the promises, establishing that Defendants did not intend to perform their promises **when** made.  *See Prieto v. Smook, Inc.,* 97 So.3d 916, 918 (Fla. 4th DCA 2012) (where plaintiff's only evidence of a positive intention not to perform is defendant's lack of performance that evidence is insufficient to form the predicate for actionable fraud).

Moreover, Plaintiff's allegations fatally undermine its conclusory assertion that Defendants had no intention of performing their promises **when** made.  Plaintiff alleges that Defendants delivered 44 out of the 50 Super Bowl tickets they "**promised**" to deliver.  (Com. ¶¶ 18, 21, 26, 28-31).  Plaintiff further alleges that Defendants were "purchasing tickets" from a ticket broker in order to perform their contractual obligations.  (*Id.* ¶ 32).  Thus, Plaintiff not only admits that Defendants substantially performed their contractual obligations, but Plaintiff also

admits that Defendants intended to honor their contractual obligations.

Because the Complaint is completely devoid of facts establishing that Defendants had no intention of performing their promises **when** made, Count I does not contain sufficient factual matter to state a claim for fraudulent inducement that is plausible on its face. *See Iqbal,* 129 S.Ct. at 1949. Thus, Count I must be dismissed for failure to state a claim.

### C.    THE COMPLAINT FAILS TO STATE A CIVIL THEFT CLAIM

To succeed on a claim for civil theft under Florida law, Plaintiff must demonstrate that Defendants "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [Plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) to deprive [Plaintiff'] of [its] right to or a benefit from the property or (b) appropriate the property to [Defendants'] own use or to the use of any person not entitled to the property." *United Tech. Corp. v. Mazer,* 556 F.3d 1260, 1270 (11th Cir. 2009) (citing FLA. STAT. §§ 772.11 & 812.014)).

Plaintiff alleges that Defendants stole $129,500 of the money that Plaintiff paid Defendants for Super Bowl tickets. (Com. ¶ 49-51). The allegations in the Complaint reflect how Plaintiff calculated $129,500 in "damages" because of Defendants' alleged theft. (*Id.*).

Plaintiff alleges that Defendants delivered 44 out of the 50 tickets "**promised**" by Defendants. (*Id.* ¶ 18, 21, 26, 28-31) (emphasis added). However, Plaintiff claims that many of the tickets delivered were not for seats in the location promised by Defendants. Plaintiff deems tickets delivered for seats not in the location promised by Defendants as undelivered. Plaintiff alleges that Defendants delivered 22 tickets for seats not in the location promised by Defendants. Plaintiff deems those tickets as undelivered for purposes of Plaintiff's "damages." (*Id.* ¶ 51).

Plaintiff claims that it paid Defendants $180,000 for 40 Super Bowl tickets. (*Id.* ¶ 15). Out of these 40 tickets, according to Plaintiff, Defendants only delivered 38 tickets and only delivered 26 for seats in the location "**promised**" by Defendants. (*Id.* ¶¶ 18, 21, 26, 28-31)

(emphasis added).  With respect to the 40 Super Bowl tickets, Plaintiff claims damages of $9,000 because of Defendants' failure to deliver 2 tickets as "**promised**" and damages of $54,000 because of Defendants' failure to deliver 12 tickets for seats in the location as "**promised**."  (*Id.* ¶¶ 18, 21, 26, 28-31, 49-51) (emphasis added).

Plaintiff claims that it paid Defendants $66,500 for 10 additional Super Bowl tickets.  (*Id.* ¶ 18).  Out of these 10 additional tickets, according to Plaintiff, Defendant only delivered 6 tickets and none of the tickets delivered were for seats in the location "**promised**" by Defendants.  (*Id.* ¶¶ 11, 18, 21, 34, 49-51) (emphasis added).  With respect to the 10 additional Super Bowl tickets, Plaintiff claims damages of $66,500 because of Defendant's failure to deliver 10 tickets for seats in the location as "**promised**." (*Id.*) (emphasis added).

Plaintiff's civil theft claim must be dismissed for two reasons.  First, the Complaint contains no facts establishing Defendants possessed felonious intent to steal Plaintiff's $129,500.  Second, the alleged theft does not go beyond, and is not independent from, Defendants' alleged failure to perform their contractual obligations.

### 1.    FELONIOUS INTENT

To establish the element of "felonious intent," Plaintiff must allege facts demonstrating that Defendants possessed felonious intent to steal the money that Plaintiff allegedly paid for the Super Bowl tickets.  *See Anthony Distribs., Inc. v. Miller Brewing Co.,* 941 F.Supp. 1567, 1575 (M.D. Fla. 1996) ("felonious intent to steal on the part of the defendant is a necessary element of proof").  In other words, Plaintiff must allege facts establishing that Defendants stole Plaintiff's $129,500 (the act) and had the intent to steal Plaintiff's $129,500 (the mens rea).  *See id.* at 1575-76 (dismissing civil theft claim because plaintiffs produced insufficient evidence of "stealing (the act)" and "felonious intent to steal (the mens rea)").

Plaintiff alleges **no** facts demonstrating that Defendants possessed felonious intent to

steal Plaintiff's money.  Instead of alleging facts in support of a necessary element of its civil theft claim, Plaintiff simply recites the elements of the claim by asserting that "Defendants obtained and/or used $129,500 of Plaintiff's money without ever intending to supply the highly valuable Super Bowl tickets," and that Defendants "unlawfully and knowingly used or endeavor to use Plaintiff's money and intention deprived or endeavor to deprive Plaintiff of its money with the intent to temporarily or permanently deprive Plaintiff of its right to the money[.]" (Com. ¶¶ 49-50).  Because the Complaint does not contain **any** facts in support of its conclusory assertions, the Complaint does nothing more than set forth a formulaic recitation of the elements of a civil theft claim.  *See Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

The Complaint also contains **no** facts establishing that Defendants knew they were stealing $129,500 from Plaintiff when Plaintiff tendered payment for the Super Bowl tickets and, thus, Defendants possessed felonious intent to steal Plaintiff's $129,500.  *See Healey v. Suntrust Serv. Corp.,* 569 So.2d 458, 460 (Fla. 5th DCA 1990) ("Theft is a specific intent crime, requiring actual knowledge on the part of the defendant.").  Once Plaintiff tendered payment to Defendants for the Super Bowl tickets, Defendants were lawfully in possession of the money pursuant to the alleged oral agreement.  As Defendants were lawfully in possession of the money, which was obtained with Plaintiff's consent and knowledge, Defendants could not form the necessary intent to steal that money.  Indeed, because Defendants were in lawful possession of the money there was no theft of any money as a matter of law.  *See Hinkle v. State,* 355 So.2d 465, 467 (Fla. 3d DCA 1978) ("one cannot steal his own goods").

Although Plaintiff asserts that Defendants took Plaintiff's money "without ever intending to supply Plaintiff with the highly valuable Super Bowl tickets," Plaintiff alleges **no** facts in support of its conclusory assertion.  *See Walker v. Figarola,* 59 So.3d 188, 190-91 (Fla. 3d DCA

2011) (upholding dismissal of civil theft claim where plaintiff "simply alleg[ed]" that defendant "never intended to keep his promise" to perform the contract).  Indeed, the Complaint contains **no** facts establishing that Defendants had, prior to allegedly stealing Plaintiff's $129,500, an intent to steal it.  *See Rosen v. Marlin,* 486 So.2d 623, 625 (Fla. 3d DCA 1986) ("a necessary element for establishing the crime of theft is that the defendant had, prior to the commission of the act, an intent to commit a theft").

Plaintiff's allegations also fatally undermine its conclusory assertion that Defendants took Plaintiff's money "without ever intending to supply Plaintiff" with the Super Bowl tickets. (Com. ¶ 49).  Plaintiff alleges that Defendants delivered 44 out of the 50 Super Bowl tickets they "**promised**" to deliver.  (*Id.* ¶¶ 18, 21, 26, 28-31).  Plaintiff further alleges that Defendants were "purchasing tickets" from a ticket broker in order to perform their contractual obligations.  (*Id.* ¶ 32).  Thus, Plaintiff not only admits that Defendants substantially performed their contractual obligations, but Plaintiff also admits that Defendants intended and attempted to honor their contractual obligations.  Because Plaintiff's allegations establish that it was Defendants' intent to comply with their contractual obligations, Plaintiff has admitted that Defendants never had the "intent to steal" Plaintiff's $129,500 before they allegedly stole it.

Plaintiff is required to allege facts establishing that Defendants possessed felonious intent to steal Plaintiff's $129,500.  *See Robertson v. Sea Pines Real Estate Co.,* 679 F.3d 278, 291 (4th Cir. 2012) (complaint must "allege facts sufficient to state elements of the claim").  Because the Complaint contains **no** such facts, Count III does not contain sufficient factual matter to state a claim for civil theft that is plausible on its face.  *See Iqbal,* 129 S.Ct. at 1949.  Thus, Count III must be dismissed for failure to state a claim.

### 2.    FELONIOUS INTENT & CONTRACTUAL RELATIONSHIP

Importantly for purposes of Plaintiff's civil theft claim, the allegations in the Complaint

establish that the parties had a contractual relationship.   Based on the allegations in the Complaint, the parties made an oral agreement for the purchase and sale of Super Bowl tickets. Defendants orally promised to sell and deliver to Plaintiff, and Plaintiff orally agreed to buy, 40 Super Bowl tickets located in the "stadium's lower level endzone" for $4,500 per ticket.  (Com. ¶ 10).   Defendants also orally promised to procure and sell to Plaintiff additional Super Bowl tickets in the stadium's "lower level" on the condition that Plaintiff perform its part of the agreement by buying the 40 Super Bowl tickets.  (*Id.* ¶ 11, 21, 34, 39, 49-51).   Plaintiff asserts that it performed its part of the agreement by paying Defendants $180,000 for the 40 Super Bowl tickets.  (*Id.* ¶ 14-15).   Plaintiff further claims that it then exercised its right to buy additional tickets by paying Defendants $66,500 for 10 additional Super Bowl tickets.  (*Id.* ¶ 18).

"[T]o establish a viable claim for civil theft where the parties have a contractual relationship, the theft must go beyond, and be independent from, a failure to comply with the terms of the contract." *Tulepan v. Roberts,* 2015 WL 235441, at *10-11 (S.D. Fla. Jan. 16, 2015); *see also 1021018 Alberta Ltd. v. Netpaying, Inc.,* 2011 WL 1103635 *4 (M.D. Fla. Mar. 24, 2011) ("[A] claim for conversion may lie even where a contractual relationship exists between the parties if the alleged conversion exists independently of an alleged failure to perform contractual duties.").

Plaintiff's allegations establish that Defendants' alleged theft does not go beyond, and is not independent from, Defendants' failure to perform their contractual obligations.   Plaintiff claims that it paid Defendants for 50 Super Bowl tickets.   Plaintiff also claims that Defendants only delivered 38 out of the 40 tickets as promised, and only 26 of the tickets delivered were for seats in the location promised by Defendants.   Plaintiff also claims that Defendants only delivered 6 out of the 10 additional tickets as promised and that none of the tickets delivered were for seats in the location promised by Defendants.  Plaintiff further claims that Defendant's

failure to deliver 22 tickets for seats in the location promised by Defendants constitutes a failure to deliver the 22 tickets. So, for the purposes of "damages," Plaintiff contends that Defendants only delivered 26 of the promised 50 tickets. Thus, Plaintiff claims "damages" based on Defendants' failure to deliver 2 tickets as promised and Defendants' failure to deliver 22 tickets for seats in the location promised by Defendants.

In claiming $129,500 in "damages," (Com. ¶ 51), Plaintiff maintains that it is entitled to damages based on Defendants' failure to deliver 2 out of the 40 Super Bowl tickets promised by Defendants ($9,000), Defendant's failure to deliver 12 out of the 40 Super Bowl tickets for seats in the location promised by Defendants ($54,000), and Defendants' failure to deliver the 10 additional Super Bowl tickets for seats in the location promised by Defendants, even though Defendants delivered 6 of those 10 additional tickets ($66,500).

Based on the allegations in the Complaint, Plaintiff is claiming that the money ($129,500) Defendants stole from Plaintiff is money Plaintiff paid to Defendants for the Super Bowl tickets. Based on the allegations in the Complaint, Plaintiff is also claiming that Defendants stole the money ($129,500) because they failed to deliver 2 tickets as promised by Defendant and failed to deliver 22 tickets for seats in the location promised by Defendants. Thus, Plaintiff's allegations establish that the $129,500 in "damages" that Plaintiff suffered because of Defendants' theft is exactly coextensive with the $129,500 in "damages" Plaintiff that suffered because of Defendants' failure to perform their contractual obligations. In other words, the alleged theft is exactly coextensive with the alleged nonperformance of the oral contract.

As the allegations in the Complaint establish, Defendants' alleged theft of Plaintiff's $129,500 is entirely premised on Defendants' failure to perform their contractual obligations. Indeed, Plaintiff's assertion that Defendants sole Plaintiff's $129,500 is entirely predicated on Defendants' alleged failure to deliver 2 tickets as promised by Defendant and alleged failure to

deliver 22 tickets for seats in the location promised by Defendants.  By failing to perform those contractual obligations, according to Plaintiff, Defendants' stole the money ($129,500) Plaintiff paid for the tickets.  Thus, Defendants' alleged theft does not go beyond, and is not independent from, a failure to perform their contractual obligations.

Because Plaintiff's allegations establish there was a contractual relationship between the parties, and because that relationship plainly encompasses the alleged theft since the theft of Plaintiff's $129,500 is entirely based on Defendants' failure to perform their contractual obligations, the alleged theft does not go beyond, and is not independent from, Defendants' failure to honor their contractual obligations.  *See Tulepan,* 2015 WL 235441, at *10-11 (dismissing civil theft claim "because there is a contractual relationship between the parties" and that "relationship plainly encompasses the alleged theft of plaintiff's [money]"); *Leisure Founders, Inc. v. CUC Int'l, Inc.,* 833 F.Supp. 1562, 1573-74 (S.D. Fla. 1993) (dismissing civil theft claim because plaintiffs "alleged the conversion of funds to be exactly coextensive with the nonperformance of an agreement between the parties").

For these reasons, Count III must be dismissed for failure to state a claim.

### D.   THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

An unjust enrichment claim requires proof of "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that would make it inequitable for him to retain it without paying the value[.]" *Rollins, Inc. v. Butland,* 951 So.2d 860, 876 (Fla. 2d DCA 2006).  An unjust enrichment claim is "equitable in nature, and therefore, is not available when there is an adequate legal remedy." *Bowleg v. Bowe,* 502 So.2d 71, 72 (Fla. 3d DCA 1987).

In asserting claims for fraud and civil theft, Plaintiff claims that it has an adequate legal remedy for Defendants' alleged "unlawful actions." (Com. ¶ 51).  Although Rule 8 does permit

alternative pleading, *see* FED. R. CIV. P. 8(d)(2), Plaintiff does not plead its unjust enrichment claim in the alternative.  *See Sun Life Assurance Co. of Can. v. Imperial Prem. Fin., LLC,* 904 F.3d 1197, 1213 n. 16 (11th Cir. 2018) ("Rule 8(d)(2) requires that alternative statements be set out in the pleading, a requirement that is generally me through either-or-propositions or if-then allegations.").  Because Plaintiff claims that it has an adequate legal remedy for Defendants' alleged "unlawful actions," a claim for unjust enrichment is not available under the circumstances and Count II of must be dismissed.

## III.   CONCLUSION

Counts I-III of the Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Dated:  June 16, 2022                            Respectfully submitted,


                                        / s / James Tarquin
                                        James P. Tarquin
                                        Florida Bar No. 906190
                                        JAMES P. TARQUIN, P.A.
                                        333 NW 3rd Avenue
                                        Ocala, Florida 34470
                                        Telephone: (352) 401-7671
                                        tarquinlawoffice@aol.com
                                        Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 16, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Rafael Recalde, Recalde Law Firm, P.A., 1815 Purdy Avenue, Miami Beach, Florida 33139.


                                        / s / James Tarquin
                                        James Tarquin