# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-CV-21780-KING/DAMIAN

STEEL MEDIA GROUP, LLC,

      Plaintiff,

v.

HAROLD LEWIS and
RICHIE BROWNE,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS COMPLAINT [ECF NO. 7]

THIS CAUSE is before the Court on Defendants, Harold Lewis and Richie Browne's (collectively, "Defendants"), Motion to Dismiss Complaint, filed June 16, 2022. [ECF No. 7 ("Motion")]. This matter was referred to the undersigned for a Report and Recommendation by the Honorable James Lawrence King, United States District Judge. [ECF No. 10]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has considered the parties' memoranda [ECF Nos. 7, 9, 15], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons that follow, the undersigned recommends that Defendants' Motion to Dismiss [ECF No. 7] be granted.

## I. BACKGROUND FACTS

The following facts are based on the allegations in the Complaint [ECF No. 1-2], which are taken as true for purposes of considering the Motion to Dismiss. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). This is an action for fraud in the

inducement, unjust enrichment, and civil theft stemming from allegedly fraudulent misrepresentations made by Defendants to Plaintiff, Steel Media Group, LLC ("Steel Media" or "Plaintiff"), regarding the sale of tickets for the National Football League's ("NFL") Super Bowl LIV in Miami. *See* Compl. at ¶ 9. Plaintiff alleges that during a December 17, 2019, phone call, Defendants represented to non-party Luis Rodriguez, Steel Media's principal, that they were able to supply Plaintiff with forty Super Bowl tickets for seats located in the stadium's lower-level endzone and an additional fifty to one hundred lower-level tickets if Plaintiff purchased all forty lower-level endzone tickets. *Id.* at ¶¶ 10-11. Plaintiff further alleges that during that same call, Defendants represented that they were able to secure these tickets because of Defendant Browne's high position within the Anheuser-Busch organization and contacts within the NFL. *Id.* at ¶ 12.

From December 30, 2019, to January 21, 2020, Plaintiff's agents wired $180,000 to Defendants for the purchase of the forty lower-level endzone tickets and $66,500 to purchase an additional ten tickets for different locations in the stadium. *Id.* at ¶¶ 14-18. Thus, Plaintiff alleges that, in total, it wired $246,500 to Defendants for the purchase of fifty tickets, forty in the lower-level endzone and ten in different locations in the stadium. *Id.* at ¶¶ 15,18. Following the initial phone call and payments to Defendants, the parties, through their representatives, communicated by text message. *Id.* at ¶ 13. According to Plaintiff, on January 19 and 20, 2020, Defendants requested that Plaintiff pay for hotel accommodations for Defendants, and Plaintiff acquiesced "in furtherance of obtaining the tickets," at a cost of $13,478. *Id.* at ¶ 16.

According to Plaintiff, on January 22, 2020, Defendant Browne informed Plaintiff he would be providing the ticket locations by January 24th, but on January 24th, Defendant

provided no ticket locations and no tickets. *Id.* at ¶¶ 17, 19. And Plaintiff alleges that on January 28, 2020, Defendant Browne stopped responding to Plaintiff but that Defendant Lewis assured Plaintiff that they were working with their NFL contacts to procure the tickets. *Id.* at ¶ 20. By this date, five days before the Super Bowl, Defendants had not provided any of the forty lower-level endzone tickets and had provided only six of the ten additional tickets purchased by Plaintiff. *Id.* at ¶ 21.

Plaintiff claims that during a Facetime call on February 1, 2020, the day before the event, Defendant Browne showed Plaintiff what he claimed was a stack of one hundred Super Bowl tickets. However, by that date, Defendants had only delivered thirty-eight tickets to Plaintiff, including twenty-six for the lower-level endzone and fourteen for other areas of the stadium. *Id.* at ¶ 31. Plaintiff claims it had already sold the tickets to their own clients based on Defendants' promises. *Id.* at ¶ 22. According to Plaintiff, they were unable to secure assurances from Defendants that the remaining tickets were forthcoming, and, because the tickets that were provided were supplied at the last minute, Plaintiff was forced to incur additional expenses by purchasing alternative seating arrangements at a cost of $300,000 in order to fulfill commitments made to its own customers. *Id.* at ¶¶ 22-25, 31. Plaintiff also alleges it was forced to reimburse $40,000 to one of its clients because it was unable to fulfill that customer's ticket order due to Defendants' failure to timely supply the tickets to Plaintiff. *Id.* at ¶ 24.

Plaintiff alleges it later discovered that Defendants had misrepresented having any NFL contacts and that Defendants were instead buying tickets from a ticket broker to fulfill Plaintiff's orders. *Id.* at ¶ 32. By the day of the game, having not received all of the tickets purchased from Defendants, Plaintiff incurred another $97,000 on purchases of additional

tickets to fulfill orders to its own customers for tickets not provided by Defendants. *Id.* at ¶¶ 32-33.

## II.    PROCEDURAL HISTORY

On March 8, 2022, Plaintiff filed a Complaint against Defendants in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. [ECF No. 1-2]. The Complaint sets forth three counts: Count I, fraud in the inducement; Count II, unjust enrichment; and Count III, civil theft. *Id.* On June 9, 2022, Defendants removed the action to this Court. [ECF No. 1]. In the Complaint, Plaintiff alleges Defendants' conduct caused "substantial losses in future business opportunities and reputation[,]" but Plaintiff does not identify specific damages or remedies sought in connection with each of its claims in Counts I and II. *See* Compl. at ¶ 35 and pp. 6-7. Plaintiff asserts a loss of $129,500 in connection with its civil theft claim (Count III). *Id.* at ¶ 51.

On June 16, 2022, Defendants filed the Motion to Dismiss now before the Court seeking dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [ECF No. 7]. Plaintiff filed its Response on June 30, 2022, and Defendants filed a Reply on July 13, 2022. [ECF Nos. 9, 15].

The Motion is fully briefed and ripe for adjudication.

## IV.    APPLICABLE LEGAL STANDARDS

### A.    *Rule 12(b)(6)*

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534

U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint that does not satisfy Rule 8's requirements for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not require detailed factual allegations, but "requires more than labels and conclusions . . . [and] a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

In considering Defendants' Motion to Dismiss, the Court views the Complaint in the light most favorable to Plaintiff and accepts all of its well-pleaded allegations as true. *Ziyadat*, 3 F.4th at 1296. At this stage, the question for the Court is not whether Plaintiff will ultimately prevail but whether it is entitled to offer evidence to support its claims. *Twombly*, 550 U.S. at 563 n.8. Courts will not grant a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley*, 355 U.S. at 45–46) (alterations added). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be

considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

    **B.**    ***Rule 9(b)***

    Claims sounding in fraud, including claims for fraud in the inducement and civil theft, are subject to the heightened pleading requirements of Rule 9(b). Similarly, Plaintiff's unjust enrichment claim is also subject to Rule 9(b)'s pleading requirements because it arises out of the alleged fraudulent conduct. *See Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-CV-23392, 2021 WL 3666312, at *8 (S.D. Fla. Aug. 18, 2021) (Bloom, J.) (citing *United States Stepe v. RS Compounding LLC*, 325 F.R.D. 699, 710 (M.D. Fla. 2017); *see also W.W. Sports Importadora Exportadora e Comercial Ltda v. BPI Sports, LLC*, No. 0:16-cv-60147, 2016 WL 9375202, at *4 (S.D. Fla. Aug. 11, 2016) (Dimitrouleas, J.) (unjust enrichment claim premised on fraudulent conduct subject to Rule 9(b) heightened particularity requirement); *Allstate Indem. Co. v. Fla. Rehab & Injury Ctrs. Longwood, Inc.*, No. 6:15-cv-1740-Orl-41GJK, 2016 WL 7177624, at *3 (M.D. Fla. July 26, 2016) (stating that the unjust enrichment claim sounded in fraud "and must, therefore, meet the heightened pleading standards as set forth in Federal Rule of Civil Procedure 9"); *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580-CIV, 2014 WL 5846735, at *1 (S.D. Fla. Nov. 12, 2014) (Bloom, J.) ("[I]t appears to be the rule that a claim for unjust enrichment is subject to Rule 9(b) only if it is premised on fraud.")).

    "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)

(quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). A complaint satisfies Rule 9(b) by providing "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (quotation marks and citation omitted).

## V.   DISCUSSION

Defendants seek dismissal of all three Counts of the Complaint. As stated above, Count I alleges fraud in the inducement, Count II alleges unjust enrichment, and Count III alleges civil theft. Notably, Plaintiff did not assert a claim for breach of contract.

The undersigned addresses Defendants' arguments for dismissal of each count of the Complaint in turn.

### A.  *Count I - Fraud In The Inducement*

Defendants assert several challenges to Plaintiff's fraud in the inducement claim. First, Defendants argue that Plaintiff improperly attempts to evade the Statute of Frauds by asserting a fraud claim for what is actually a breach of contract claim, which, according to Defendants, is barred by the Statute of Frauds. *See generally* Mot. at 4-7. Defendants also argue that Count I is barred by the independent tort doctrine because the alleged fraud and resulting damages are not distinct from claims or damages arising from the parties' contractual relationship. *See id.* at 6-7. Lastly, Defendants argue that Count I does not sufficiently state a claim for fraudulent inducement because it is not pled with the requisite specificity and is predicated on Defendants' promises made after the parties agreed to enter into their contractual agreement. *Id.* at 19.

1.  *Application Of The Statute Of Frauds*

Defendants initially argue that Plaintiff improperly attempts to evade the Statute of Frauds by asserting a fraudulent inducement claim for conduct that is, in reality, a breach of contract claim. Mot. at 5-6. Thus, Defendants argue that Count I must be dismissed because the Complaint alleges no facts establishing that the contract between the parties satisfied the writing requirement of the Statute of Frauds. *Id.*

In response, Plaintiff argues that the Statute of Frauds is inapplicable to its claim for fraudulent inducement. Resp. at 11. Nevertheless, Plaintiff asserts that the writing requirement of the Statute of Frauds does not apply when payments for goods have been made and accepted, as is the case here. *Id.* Defendants did not respond to this argument in their Reply.

The undersigned agrees that Plaintiff cannot evade the Statute of Frauds by asserting a fraud claim in the place of an oral contract claim. *See Topp, Inc. v. Uniden Amer. Corp.*, 483 F. Supp. 2d 1187, 1222 (S.D. Fla. 2007) (Moreno, J.) (citing *Eclipse Med. Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1345 (S.D. Fla 1999) (*citing Ostman v. Lawn*, 305 So. 2d 871 (Fla. 3rd DCA 1974))); *Cohen v. Corbitt*, 135 So. 3d 527, 530 (Fla. 1st DCA 2014). Nevertheless, whether pled as a breach of an oral contract or as a fraud claim, the undersigned finds that the claim appears on its face to fall within the exception to the Statute of Frauds for contracts for goods for which payment has been made and accepted. Fla. Stat. § 672.201(3)(c).

Florida's Statute of Frauds provides, in part: "Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale

has been made between the parties and signed by the party against whom enforcement is sought[.]" Fla. Stat. § 672.201(1). An exception to this writing requirement applies to contracts that are valid in other respects when payment for goods has been made and accepted. *Id.* at (3)(c).

In the Complaint, Plaintiff alleges it wired $246,500 to Defendants for Super Bowl tickets and that Defendants accepted and kept the payments. Compl. at ¶¶ 15, 18. Accepting these allegations as true, as we must at this stage, the oral contract between the parties falls within the exception to the Statute of Frauds in Section 672.201(3)(c) for goods for which payment has been made and accepted.

Therefore, even if alleged as a breach of contract claim, Plaintiff's claim in Count I would not be barred by the Statue of Frauds. It follows that the fraud in the inducement claim cannot be viewed as merely an attempt to evade the Statute of Frauds because Plaintiff has a good faith basis for claiming the Statute of Frauds does not apply to the agreement at issue in this case.

For the foregoing reasons, to the extent Defendants seek dismissal of Count I based on the Statute of Frauds, the undersigned recommends denying the Motion to Dismiss.

### 2. *The Independent Tort Doctrine*

Defendants next argue that Count I is barred by the independent tort doctrine for two reasons: (1) the alleged fraud is not separate from the performance of the contract; and (2) Plaintiff pleads no facts establishing damages independent, separate, and distinct from the contract's alleged breach. Mot. at 8.

a)   *Whether The Alleged Fraud is Separate From Performance Of A Contract*

Defendants argue that the allegations in the Complaint only establish that Defendants misrepresented their ability to perform under the parties' oral contract. Mot. at 9. They seek dismissal of the fraudulent inducement claim on grounds the alleged misrepresentations concern the heart of the parties' agreement and, therefore, the claim is barred by the independent tort doctrine. Mot. at 9-10.

In response, Plaintiff argues that Defendants committed acts that are separate and distinct from the breach of any potential contract that may exist between the parties, including lying about the source of the tickets, their ability to perform, and the conditions necessary to obtain tickets. Resp. at 7. As such, Plaintiff argues that the allegations satisfy the requirement that the fraud allegations be separate and distinct from a breach of the parties' obligations under a contract. *Id.*

Defendants argue in reply that contrary to Plaintiff's arguments and claims in the Response, Plaintiff does not allege in the Complaint that Defendants lied about the source of the tickets, their ability to perform, or the conditions necessary to obtain tickets, among other things. Reply at 3-7. Nevertheless, they argue that none of these new additional allegations in Plaintiff's Response provide a basis for an independent fraud claim because all of these relate solely to Defendants' performance under the parties' oral contract. *Id.* at 5.

"[T]o set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort." *Kay v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) (Rosenbaum, J.) (citing *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J. concurring)). A claim of fraud in

the inducement is generally considered a tort independent from a breach of contract because it requires the plaintiff to prove facts separate and distinct from the facts necessary to prove the breach of contract. *Freeman v. Sharpe Res. Corp.*, No. 6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *HTP, LTD. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)). These separate facts may include misrepresentations or omissions which caused the plaintiff to enter into the contract. *Ladner v. AmSouth Bank*, 32 So. 3d 99, 105 (Fla. 2d DCA 2009). However, a plaintiff cannot avoid dismissal under the independent tort doctrine merely by labeling a breach of contract claim as "fraud in the inducement." *See Medalie v. FSC Sec., Corp.*, 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000) (Gold, J.). Rather, the alleged fraud must be based on conduct separate from the performance of the contract. *Id.*

Thus, the critical inquiry here is whether Plaintiff's allegations of fraud are based on conduct separate from the performance of the parties' contractual obligations.

The Complaint alleges that on December 17, 2019, Defendants spoke with Plaintiff's principal and represented that they were able to supply Plaintiff with forty lower-level endzone tickets and an additional fifty to one hundred lower-level tickets. Compl. at ¶¶ 10-11. Plaintiff proceeded to pay Defendants in order to purchase the forty lower-level endzone tickets, in addition to ten of the additional fifty lower-level tickets offered. ¶¶ 14-18.

The Complaint also alleges that prior to entering the agreement with Plaintiff. Defendants represented that they were able to secure these "unique and valuable tickets" because of Defendant Browne's high position within the Anheuser-Busch organization and contacts within the NFL. *Id.* at ¶ 12. Plaintiff alleges it later learned that Defendants did not have an NFL contact at all but were, instead, purchasing tickets from a ticket broker. *Id.* at ¶

11

32. Plaintiff claims Defendants' misrepresentations regarding their contacts and sources for the "unique and valuable tickets" and their ability to provide the quantity of tickets offered to Plaintiff were made to induce Plaintiff to enter into the oral agreement with Defendants.

Defendants argue that the statements regarding their ability to procure sufficient tickets to satisfy Plaintiff's purchase relate to Defendants' performance of the parties' oral contract and, therefore, do not save the fraudulent inducement claim from the independent tort doctrine. Mot. at 9. The undersigned disagrees. The court's order in *Yuken Corporation v. Gedcore, LLC*, No. 22-20661-CIV, 2022 WL 3701233 (S.D. Fla. June 21, 2022) (Altonaga, J.) is instructive. In *Yuken*, the parties entered into a contract for the purchase of frozen lobster tails. *Id.* at *1. Prior to the agreement, the defendant represented to the plaintiff that it had enough lobster tails in stock to complete the order, despite knowing that it neither had enough inventory at the time nor would it in the future. *Id.* The plaintiff alleged the defendant made the misrepresentations to induce the plaintiff to enter into the contract and make the agreed upon payments. *Id.* The defendant argued the alleged misrepresentations related to the defendant's performance of the contract. *Id.* at *5. Citing *Prewitt Enterprises, LLC v. Tommy Constantine Racing, LLC*, 185 So. 3d 566 (Fla. 4th DCA 2016), Judge Altonaga found that the alleged misrepresentations were separate from the essence of the agreement, and explained:

> As alleged, the heart of the parties' agreement was the fulfillment of Plaintiff's order for frozen lobster tails. But representing that someone *will* fulfill an order is not the same as representing that it *presently* can do so from its own inventory. So, when Gedcore and Admassie represented, pre-contract, that they had sufficient inventory, they went beyond the essence of the contract. (*See* Resp. 10).

> Likewise, Admassie's misrepresentation can be construed independently from the performance of the contract. The contract did not prescribe whether the lobster tails would come from Gedcore's own inventory or elsewhere. Nothing in the contract suggests Gedcore would be in breach if it used another supplier to provide the lobster tails as opposed to its own inventory. Admassie's misrepresentation thus boils down to an attempt to induce Plaintiff into believing that Gedcore had

> a reliable means of obtaining lobster tails. To borrow the logic of one court, "[i]f you buy [the product] based on [a] factual representation ... [and] the seller knew [the factual representation was false], but lied in order to trick you into agreeing to buy it, you have a cause of action for fraud[.]" *La Pesca Grande Charters, Inc.*, 704 So. 2d at 712 (alterations added). Such is the case here.

No. 22-20661-CIV, 2022 WL 3701233, at *6. Likewise, in the instant case, Defendants' representations regarding their access to an inventory of unique and valuable tickets through NFL and Anheuser-Busch contacts made to Plaintiff before the parties reached an agreement for the sale of the Super Bowl tickets can be construed independently from Defendants' performance of the contract as meant to induce Plaintiff to believe that Defendants had ready access to the specified tickets. *See also Freeman*, No. 6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *8 (recommending denial of motion to dismiss as to fraudulent inducement claim to the extent alleged statements were "grounded in the genesis of the parties' understanding and agreement").

Accordingly, the undersigned finds that the allegations in the Complaint are sufficient to establish that the conduct underlying the fraud in the inducement claim is separate and distinct from the parties' oral agreement.

b) *Whether The Complaint Alleges Separate And Distinct Damages*

Although Plaintiff has established that its fraud claim stems from separate conduct than that required by the parties' oral agreement, Plaintiff has not alleged separate damages resulting from the fraud claims as opposed to those resulting from Defendants' breach of the parties' agreement. Again, Judge Altonaga's order in *Yuken* is instructive. Observing that Plaintiff failed to allege separate damages stemming from the misrepresentations that were distinct from those sustained from the breach of contract, Judge Altonaga found that the fraud claim was barred by the independent tort doctrine: "Without any allegation that [defendant]'s

fraud caused damages different from the damages arising from [defendant]'s breach of the parties' contract, the fraud claim cannot be characterized as independent." No. 22-20661-CIV, 2022 WL 3701233, at *6 (citing *Peebles v. Puig*, 223 So. 3d 1065, 1066-67 (Fla. 3rd DCA 2017) ("It is . . . well settled that for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach."); *ESJ JI Operations, LLC v. Domeck*, 309 So. 3d 248, 250 (Fla. 3d DCA 2020)).

As indicated above, Plaintiff does not specifically allege what damages stem from the fraud in the inducement claim. Although Plaintiff did not assert a breach of contract claim, the harm identified in the Complaint and the relief requested in Counts I and II are damages generally available for breach of contract claims. *See Air Caledonie Int'l v. AAR Parts Trading, Inc.*, 315 F. Supp. 2d 1319, 1343 (S.D. Fla. 2004) (Altonaga, J.) (damages for lost future business opportunities available in breach of contract action).

In the absence of alleged damages stemming from the misrepresentations that are distinct from damages available for the breach of the parties' agreement, the fraud in the inducement claim cannot be characterized as independent and is, therefore, barred by the independent tort doctrine. However, it is possible this shortcoming may be remedied through an amendment to the Complaint specifying damages stemming from the fraudulent conduct alleged in Count I.

Accordingly, the undersigned recommends the Motion be granted as to Count I, on the grounds the fraud in the inducement claim is barred by the independent tort doctrine due

to the failure to identify distinct damages stemming from the alleged fraudulent conduct, and that Count I be dismissed without prejudice.[1]

### 3. *The Sufficiency Of The Allegations In Support Of Count I*

Although the undersigned recommends dismissal without prejudice of Count I, Defendants' argument regarding the sufficiency of the fraud in the inducement claim warrants discussion in the event Plaintiff elects to amend the Complaint to allege damages sustained as the result of Defendants' misrepresentations. *See* Mot. at 17.

"A cause of action for fraud in the inducement contains four elements: (1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808-09 (11th Cir. 2010) (internal quotations and citations omitted). As explained above, a party alleging fraud "must state with particularity the circumstances constituting the fraud," Fed. R. Civ. P. 9(b), including, in relevant part, "the time and place of each statement." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). As a general rule, "an action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact." *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3rd DCA 2001); *see PVC Windoors*, 598 F.3d at 809 n.12. However, Florida courts recognize an exception to this rule where the promise of future action is made with no intention of performing. *Thor Bear, Inc. v. Crocker*

---

[1] Plaintiff did not request leave to amend in its Response. Therefore, the undersigned does not address whether Plaintiff is entitled to leave to amend the Complaint but does note that the Court has not yet set a deadline for amendment of pleadings in this case. Therefore, should Plaintiff seek leave to amend, it must comply with the requirements of the applicable Federal Rules of Civil Procedure and the Local Rules for the Southern District of Florida.

*Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994), *reh'g denied, clarification granted* (Apr. 4, 1995).

Defendants argue that the Complaint does not satisfy Rule 9(b) of the Federal Rules of Civil Procedure because it does not state when or where the alleged misrepresentations were made. Mot. at 16. They also argue that Count I fails to state a claim because it is predicated on Defendants' failure to fully perform their promises of supplying the requested Super Bowl tickets and that no facts support the conclusory assertion in the Complaint that Defendants misrepresented their intention to supply the tickets. *Id*. at 17-18.

In response, Plaintiff argues that the Complaint sets forth specific actions and omissions that sufficiently state a claim for fraudulent inducement. Resp. at 5. Regarding whether Defendants intended to perform, Plaintiff asserts that the allegations in the Complaint establish that Defendants had no intention of delivering the 40 lower-level endzone tickets that were offered at the time they induced Plaintiff to wire them $180,000, even though they did ultimately deliver some tickets to the event. *Id*. at 9. Defendants contend, in their Reply, that Plaintiff is now attempting to salvage its fraud claim by mischaracterizing the allegations in the Complaint and setting forth new allegations in its Response. Reply at 3.

Independent tort doctrine issues aside, the undersigned finds that the Complaint sufficiently alleges a claim for fraud in the inducement. Plaintiff alleges: (1) during a phone call on December 17, 2019, Defendants represented that they could supply Plaintiff with forty lower-level end zone Super Bowl tickets and fifty to one hundred additional lower-level tickets due to Defendant Browne's position within Anheuser-Busch and contacts within the NFL (Compl. at ¶¶ 11-12); (2) Defendants did not actually have an NFL contact, but, rather, were purchasing tickets from a ticket broker (*Id*. at ¶ 32); (3) Defendants' misrepresentations were

16

made with the intent to obtain funds from Plaintiff and convert such funds for Defendants' own use (*Id*. at ¶ 41); and (4) Plaintiff reasonably relied on Defendants' misrepresentations and suffered damages as a result. (*Id*. at ¶¶ 42-43). The Complaint also alleges that the representations were material. *See id*. at ¶¶ 34, 39.

Moreover, the allegations are made with sufficient particularity, including identifying the "who, what, when, where, and how." According to the Complaint, Defendants made representations regarding their access to and ability to supply Plaintiff with the unique and valuable lower-level endzone tickets and additional lower-level tickets during a phone call on December 17, 2019. *Id*. at ¶¶ 10-11. The Complaint identifies the participants on the December 17, 2019, call and the details of Defendants' representations, including their representations that they were able to secure these tickets because of Defendant Browne's position with Anheuser-Busch and contacts within the NFL. *Id*. at ¶ 12. Accordingly, the Complaint sufficiently sets forth "specific acts and omissions which, if true, might well be found after a trial to constitute fraudulent conduct" by Defendants. *Mobil Oil Corp. v. Dade County Esoli Management Co.*, 982 F. Supp. 872, 879 (S.D. Fla. 1997) (Highsmith, J.).

Finally, Defendants' argument that Plaintiff's fraud claim must be dismissed because it is predicated on their promises of future action (delivery of the requested Super Bowl tickets) is inconsistent with the allegations of the Complaint. *See* Mot. at 17. Although an action for fraud generally may not be predicated on statements of opinion or promises of future action, when the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false, then the opinion may be treated as a statement of fact. *Baker v. United Servs. Auto. Ass'n*, 661 So.2d 128 (Fla. 1st DCA 1995), *rev.*

*denied*, 669 So. 2d 252 (Fla. 1996). Additionally, if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may also constitute a fraudulent misrepresentation.[2] *Noack v. Blue Cross & Blue Shield of Fla., Inc.*, 742 So.2d 433 (Fla. 1st DCA 1999).

Although some of the misrepresentations alleged in the Complaint relate to Defendants' failure to deliver the agreed-upon tickets, others—mainly, Defendants' misrepresentations regarding their contacts within the NFL and access to unique and valuable tickets—are not a promise of future action, but, instead, are statements concerning then-existing facts. These alleged misrepresentations are the foundation of Plaintiff's fraudulent inducement claim. Thus, the undersigned finds that Plaintiff's fraudulent inducement claim is not predicated on Defendants' promise of future performance but rather on their misrepresentations concerning then-present facts which induced Plaintiff to wire Defendants money for the requested tickets. The Complaint also sufficiently alleges that Defendants had no intention of delivering all the requested tickets. *See* Compl. at ¶¶ 34, 39 (alleging Defendants made misrepresentations regarding their intent to supply the tickets).

---

[2] Notably, none of the authority relied on by Defendants involves dismissal of a claim on this basis alone. *See, e.g.*, *Quantum Capital, LLC v. Banco de los Trabajadores*, No. 1:14-CV-23193-UU 2015 WL 12259226, at *10 (S.D. Fla. Dec. 22, 2015) (Ungaro, J.) (granting summary judgment for defendants on fraud in the inducement claim), *Mejia*, 781 So. 2d at 1177 (reversing trial court order granting motion to dismiss because, in part, plaintiff properly pled their fraud in the inducement claim). *Alexander/Davis Properties, Inc. v. Graham*, 397 So. 2d 699 (Fla. 4th DCA 1981) (reversing final judgment in part because there was no finding of fraud in the inducement) *ADJ 26, LLC v. Gigi*, No. 21-CV-62104, 2022 WL 256955, at *15-16 (S.D. Fla. Jan. 11, 2022) (Strauss, J.), *report and recommendation adopted sub nom. ADJ 26 LLC v. Gigi*, No. 21-62104-CIV, 2022 WL 255375 (S.D. Fla. Jan. 27, 2022) (recommending denial of plaintiff's motion for preliminary injunction because, in part, plaintiff failed to establish a substantial likelihood of success of claim for fraud in the inducement), *Prieto v. Smook, Inc.*, 97 So.3d 916, 918 (Fla. 4th DCA 2012) (reversing final judgment because of lack of evidence in record of fraud in inducement).

Accordingly, the Complaint sufficiently states a claim for fraudulent inducement in satisfaction of Federal Rule of Civil Procedure 9(b).

**B.** *Count II – Unjust Enrichment*

Count II of the Complaint alleges unjust enrichment. A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain it without paying the value thereof. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012); *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237 (Fla. 2004). Plaintiff has alleged each of these elements in Count II, albeit in a conclusory fashion. *See* Compl. at ¶¶ 45-47.

Defendants contend the Complaint fails to state a claim for unjust enrichment and specifically challenge the claim on the grounds adequate legal remedies exist by virtue of the fact that Plaintiff has also pled claims for fraud and civil theft based on the same conduct and for which Plaintiff seeks the same damages. Mot. at 25. Defendants also complain that Plaintiff has not expressly alleged that the unjust enrichment claim is pled in the alternative to the fraud-based claims. *Id*. Plaintiff responds that its unjust enrichment claim is proper because the Complaint does not allege an express contract between the parties, and that it is only upon a showing of an express contract between parties that an unjust enrichment claim fails. Resp. at 15-16.

1. *Sufficiency Of The Allegations In Support Of Count II*

Before turning to Defendants' specific legal challenges to Plaintiff's unjust enrichment claim, the undersigned addresses an overall issue with the conclusory fashion in which the claim is alleged.

As noted above, the unjust enrichment claim arises out of Defendants' alleged fraudulent conduct and is, therefore, subject to Rule 9(b)'s heightened pleading requirements. *See Jackson*, No. 20-CV-23392, 2021 WL3666312, at *8. Count II arguably fails to even satisfy Rule 8(a) as it contains only a formulaic recitation of the elements of an unjust enrichment claim. *See Twombly*, 550 U.S. at 555 (Rule 8 requires more than a mere formulaic recitation of the elements of a claim). Based on a review of the allegations in Count II, it is not clear, for example, what benefit Defendants retained that is the basis for the unjust enrichment claim. Although it is clear from the general allegations that Plaintiff made payments to Defendants and did not receive everything they paid for in return, it is not clear what part of these payments now serve as the basis for the unjust enrichment claim or how or what relief will remedy Plaintiff's harm.

Therefore, the undersigned finds Count II fails to satisfy the applicable pleading requirements.

### 2.   *Failure To Allege Lack Of An Adequate Legal Remedy*

It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy. *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236–37 (S.D. Fla. 2007) (Jordan, J.) (citing *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.,* 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005)). "Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists." *Am. Honda Motor Co.,* 390 F. Supp. 2d at 1178. A review of Plaintiff's Complaint reflects that Plaintiff has not alleged that it lacks an adequate remedy at law. In fact, Plaintiff seeks the same relief, an award of monetary damages, for all three claims in the Complaint, and all three claims are based on the same conduct.

Plaintiff argues that it is only when an express contract is established that an unjust enrichment claim must be dismissed. However, that does not address Defendants' argument. The undersigned agrees, and it is in fact well established, that when a defendant challenges an unjust enrichment claim on grounds a contract claim exists, it is only upon a showing that an express contract exists that the unjust enrichment count fails. "Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment *on these grounds* is premature." *Mobil Oil Corp.*, 982 F. Supp. at 880  (emphasis added). In this case, Defendants do not seek dismissal *on these grounds.* Instead, Defendants argue that an adequate remedy at law exists because of the fraudulent inducement and civil theft claims for which Plaintiff seeks damages in Counts I and III.

As indicated above, Plaintiff fails to allege, either in connection with its unjust enrichment claim or anywhere in the Complaint, that no adequate remedy at law is available. *See Coleman v. Cubesmart*, 328 F. Supp. 3d 1349, 1367 (S.D. Fla. 2018) (Martinez, J.) (stating that because plaintiff's complaint alleges that a valid contract exists, he must allege that no adequate remedy at law exists within his unjust enrichment claim); *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *7 (S.D. Fla. Sept. 23, 2011) (Martinez, J.) ("[B]ecause Plaintiffs' complaint also alleges that a valid contract exists[,] . . . Plaintiffs must allege that no adequate remedy at law exists within their unjust enrichment claim.").

Although, in this case, the unjust enrichment claim does not include an allegation that Plaintiff entered into a binding and enforceable contract with Defendants, under Florida law, when, as here, the pleading demonstrates that Plaintiff's claims arise out of an oral contract, the failure to allege a breach of contract does not relieve Plaintiff of the obligation to plead in

its unjust enrichment claim that no adequate remedy at law exists. In *Brett v. Toyota Motor Sales, U.S.A., Inc.*, the court acknowledged that unless an express contract exists, "generally under Florida law, the requirement to plead that no adequate remedy at law exists does not apply to claims for unjust enrichment." No. 6:08-cv-1168-Orl-28GJK, 2008 WL 4329876, at *8 (M.D. Fla. Sept. 15, 2008) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 3d DCA 1998)). In *Brett*, as in the instant case, neither party argued that an express contract exists, but the court nevertheless held that the plaintiff was "required to plead that no adequate remedy at law exists" because, on the face of the complaint, it was "clear a contract exists regarding the transaction at issue." No. 6:08-cv-1168-Orl-28GJK, 2008 WL 4329876, at *8.

Here, too, even though Plaintiff has not alleged a breach of contract claim and neither party argues that an express contract exists, it is clear from the face of the Complaint that Plaintiff's claims are based on or arise out of an agreement between the parties. Assuming without deciding that Defendants' alleged conduct constitutes breach of the parties' agreement, Plaintiff has a contractual remedy, but it "fails to allege that its contractual remedy is inadequate." *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998) (Gold, J.). In the absence of an allegation that the contractual remedies available to it are inadequate, the unjust enrichment claim is inadequate. *S. Logistics, Inc. v. Custom Ecology, Inc.*, No. 3:20-CV-631-J-39MCR, 2020 WL 10502624, at *6 (M.D. Fla. Oct. 29, 2020), *report and recommendation adopted*, No. 3:20-CV-631-J-39MCR, 2020 WL 10502628 (M.D. Fla. Dec. 11, 2020); *Ame. Honda Motor Co.*, 390 F. Supp. 2d at 1178 (M.D. Fla. 2005).

And, as Defendants aver, Plaintiff also has legal remedies available to it through its fraud and civil theft claims, yet Plaintiff fails to allege that those remedies are inadequate. As noted above, Plaintiff's fraud and civil theft claims are based on the same conduct as the

unjust enrichment claim. If Plaintiff is able to demonstrate that Defendants misled them and Plaintiff was damaged as a result, then Plaintiff has a remedy at law based on its fraud in the inducement and civil theft claims. Because, according to the allegations in the Complaint, an adequate remedy exists at law, Plaintiff has not adequately stated a claim upon which relief may be granted for unjust enrichment. *Lopez v. Triangle Fire, Inc.*, No. 15-22209-CIV, 2016 WL 10592228, at *3 (S.D. Fla. Dec. 14, 2016) (King, J.) ("When, as in the case at bar, there are monetary damages available via an alternative claim, an unjust enrichment claim cannot be sustained."); *Prohias*, 490 F. Supp. 2d at 1236 ("[T]he plaintiffs' claims for unjust enrichment should be dismissed because the plaintiffs do not plead that they lack an adequate legal remedy."); *Am. Honda Motor Co.,* 390 F. Supp. 2d at 1178 ("The [d]efendants' quasi contract claim is predicated on the same set of allegations supporting their claims under FUTSA and FDUTPA. Accordingly, because an adequate remedy exists at law, the Defendants have not stated a claim upon which relief may be granted for . . . unjust enrichment.").

Therefore, the undersigned finds that because Plaintiff has not alleged that there is no adequate remedy at law, Plaintiff has not stated a claim upon which relief may be granted for unjust enrichment.

3. *Failure To Allege Unjust Enrichment Claim Is Pled In The Alternative*

Finally, a plaintiff is generally permitted to plead an unjust enrichment claim in the alternative, which would normally mean that dismissal of that claim based solely on the existence of a contract or potential for an adequate remedy at law would be premature and inappropriate. *See Coleman*, 328 F. Supp. 3d at 1367; *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013) (Marra, J.) ("While the theory of unjust enrichment

is equitable in nature and is, therefore, not available where there is an adequate legal remedy, a plaintiff may maintain an unjust enrichment claim in the alternative to its legal claims."). However, as Defendants point out, Plaintiff has not alleged that the unjust enrichment count is pled in the alternative. Should Plaintiff seek to avoid dismissal based on the availability of an adequate remedy at law, Plaintiff must indicate whether the unjust enrichment claim is pled in the alternative to other claims.

For the foregoing reasons, the undersigned recommends Defendants' Motion to Dismiss be granted as to Count II of the Complaint. The shortcomings in Plaintiff's unjust enrichment claim may be remedied by alleging further details in support of the claim, including an indication of whether an adequate remedy at law exists and whether the claim is pled in the alternative to other claims. Therefore, the undersigned recommends the dismissal of Count II be without prejudice.

**C.** *Count III – Civil Theft*

Count III asserts a claim for civil theft based on Defendants' alleged misappropriation of $129,500 of Plaintiff's money paid to Defendants for Super Bowl tickets which Defendants allegedly never intended to supply.

A claim for civil theft is "essentially a conversion in which the defendant acted with criminal intent." *Primerica Life Ins. Co. v. Guerra*, No. 16-CV-22330-KMM, 2016 WL 10591985, at *2 (S.D. Fla. Dec. 29, 2016) (Moore, J.). To state a claim for civil theft under Florida law, a plaintiff must allege that the defendant (1) knowingly (2) obtained or used, or endeavored to obtain or use, the plaintiff's property with (3) "felonious intent" (4) either temporarily or permanently to (a) deprive the plaintiff of its right to or a benefit from the property or (b) appropriate the property to the defendant's own use or to the use of any person

not entitled to the property. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11 (providing civil remedy for theft or exploitation), 812.014(1) (criminal theft statute)).

Defendants argue that Plaintiff's civil theft claim must be dismissed for two reasons. Mot. at 7. First, they contend that the Complaint does not allege and contains no facts establishing that Defendants possessed felonious intent to steal Plaintiff's money. *Id*. Second, they argue that the alleged theft does not go beyond, and is not independent from, Defendants' alleged failure to perform their contractual obligations.

1. *Felonious Intent*

Defendants argue that the Complaint alleges no facts demonstrating that Defendants possessed felonious intent to steal Plaintiff's money and no facts demonstrating that Defendants knew they were stealing $129,500 from Plaintiff when Plaintiff tendered payment for the Super Bowl tickets. Mot. at 20-21. In response, Plaintiff asserts that felonious intent may be established by circumstantial evidence and that the Complaint alleges detailed and specific facts, which, if proven, would adequately demonstrate Defendants' felonious intent to convert Plaintiff's funds to their own use. Resp. at 12-13.

As Defendants point out, to establish civil theft, "it is necessary to show not only that [the] defendant obtained or endeavored to obtain the plaintiff's property, but that he did so with felonious intent to commit theft." *Palmer v. Gotta Have It Golf Collectibles, Inc.*, 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000) (Seitz, J.); *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1352 (S.D. Fla. 2021) (Scola, J.). Felonious intent is the intent to deprive another of its property. *Wachovia Bank N.A. v. Tien*, 658 F. App'x 471, 475 (11th Cir. 2016) (citing *Aspen Invs. Corp. v. Holzworth*, 587 So.2d 1374, 1376 (Fla. 4th DCA 1991)). Felonious intent may be

established by circumstantial evidence. *Id. See also Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1575 (M.D. Fla. 1996).

Initially, review of the Complaint reflects Plaintiff does not actually state that Defendants acted with "felonious intent." However, while necessary to plead felonious intent, these exact words need not be used. *See Taylor v. Trapeze Mgmt., LLC*, No. 0:17-CV-62262-KMM, 2018 WL 9708619, at *8 (S.D. Fla. Mar. 26, 2018) (Moore, J.) (citing *Lajos v. duPont Pub., Inc.*, 888 F. Supp. 143, 146 (M.D. Fla. 1995) ("While there is no dispute that the words 'criminal' or 'felonious intent' are not included in the Complaint, there is disagreement as to whether criminal or felonious intent is demonstrated by Plaintiff's allegations of fact. The failure to include the specific language is not itself sufficient cause for dismissal."); *Burciaga*, v. Gold Club Tampa, Inc., No. 8:16-CV-790-T-27JSS, 2016 WL 9526567, at *6 (M.D. Fla. Dec. 28, 2016) ("But the words 'felonious intent' are not required to state a claim for civil theft."); *Krupa v. Platinum Plus, LLC*, No. 8:16-CV-3189-T-33MAP, 2017 WL 1050222, at *8 (M.D. Fla. Mar. 20, 2017) ("While Plaintiffs will have to prove the elements of civil theft by the requisite degree of proof to ultimately prevail, at this preliminary stage, Florida law does not require them to plead felonious intent").

Therefore, the issue is whether Plaintiff has alleged sufficient facts to demonstrate felonious intent.

The Complaint alleges that Defendants misrepresented their intent to supply the lower-level endzone tickets to Plaintiff (*Id.* at ¶ 34); that Defendants obtained and/or used $129,500 of Plaintiff's money without ever intending to supply Plaintiff with the tickets (*Id.* at ¶ 49); and that Defendants intentionally deprived Plaintiff of its money for Defendants' own use (*Id.* at ¶ 50). The undersigned finds Plaintiff has explicitly alleged that Defendants made

deliberately false representations to Plaintiff, with the intent to deprive Plaintiff of its property, and, according to the Complaint, without any intention of providing Plaintiff with the goods promised in exchange for Plaintiff's property. Viewing the allegations in the light most favorable to Plaintiff, the undersigned finds these allegations sufficient to survive dismissal based on an alleged lack of allegations demonstrating felonious intent.

> 2. _Whether The Civil Theft Allegations Go Beyond A Failure To Comply With The Terms Of The Parties' Oral Agreement_

Next, Defendants assert that the allegations in the Complaint establish that the parties had a contractual relationship, and, therefore, Plaintiff cannot bring a claim for civil theft because the alleged theft does not go beyond and is not independent of Defendants' alleged failure to perform under the terms of the parties' contract. Mot. at 22-23.

In response, Plaintiff argues that the allegations in the Complaint sufficiently allege conduct independent of the failure to perform under the parties' oral agreement citing the following conduct: "the material misrepresentations made by Defendants in procuring the agreement," "Defendants' disappearance after payment was made," "Defendants' shell game of displaying incorrect tickets via Facetime," "unjustifiable delays in providing tickets under the guise of ongoing communication with their supposed NFL contacts," and "lies and deceit regarding the source of the tickets." Resp. at 14-15.

In this case, the property that is the subject of Plaintiff's civil theft claim is Plaintiff's money paid in exchange for Super Bowl tickets pursuant to the parties' oral agreement. Where, as here, the property at issue in a civil theft claim is also the subject of a contract between the parties, the allegations of civil theft must go beyond, and be independent from, a failure to comply with the terms of the contract. _Gasparini v. Pordomingo_, 972 So. 2d 1053, 1055 (Fla. 3rd DCA 2008). In such circumstances, a civil theft claim requires additional proof

of "an intricate sophisticated scheme of deceit and theft." *Epoch Int'l Partners, LLP v. Bigfoot Inc.*, 587 F. Supp. 3d 1214, 1221 (S.D. Fla. 2022) (Singhal, J.) (*quoting Trend Setter Villas of Deer Creek v. Villas on Green*, 569 So .2d 766, 767 (Fla. 4th DCA 1990). "In other words, there is a limited exception if a defendant's acts were not merely a failure to perform under the contract, but 'an affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted.'" *Pharma Funding, LLC v. FLTX Holdings, LLC*, No. 20-21103-CIV, 2021 WL 1166051, at *6 (S.D. Fla. Mar. 8, 2021) (Torres, J.), *report and recommendation adopted*, No. 20-21103-CIV, 2021 WL 1165420 (S.D. Fla. Mar. 26, 2021) (quoting *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1362 (M.D. Fla. 2007)).[3]

Courts in Florida have found that civil theft allegations constitute more than a breach of contract in two situations. First, civil theft may be established despite the existence of a contract "where defendants or their employees have stolen or embezzled funds, which were entrusted to them by the plaintiffs, for their own benefit." *Pharma Funding*, No. 20-21103-CIV, 2021 WL 1166051, at *6-7 (citing *Szterensus v. Bank of Am., N.A.*, No. 08-22669-CIV-COOKE, 2010 WL 427509, at *1 (S.D. Fla. Feb. 1, 2010) (Cooke, J.), and *Burke v. Napieracz*, 674 So. 2d 756, 758 (Fla. 1st DCA 1996)). "Under those circumstances, 'the contract between the parties is irrelevant to the facts surrounding the alleged conversion or [ ] the [breach of] contract is merely incidental to the conversion.'" *Pharma Funding*, No. 20-21103-CIV, 2021 WL 1166051, at *6. (quoting *Szterensus*, No. 08-22669-CIV-COOKE, 2010 WL 427509, at *3).

---

[3] Unlike the fraud in the inducement claim, Defendants' misrepresentations made prior to the parties' oral contract separate and apart from Defendants' alleged failure to perform under the contract are not sufficient to allege civil theft.

Additionally, civil theft may arise despite the parties' contractual relationship "when a plaintiff owns funds and the money is given to the defendant to temporarily hold in a segregated and identifiable account, which the defendant then refuses to return." *Pharma Funding*, No. 20-21103-CIV, 2021 WL 1166051, at *6  (citing *1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-CV-568-T-27MAP, 2011 WL 1103635, at *1 (M.D. Fla. Mar. 24, 2011) (finding that defendant had a common-law duty to return funds to plaintiff where plaintiff's entitlement to those funds did not arise out of contract)); *Batlle v. Wachovia Bank, N.A.*, 2011 WL 1085579, at *2 (S.D. Fla. Mar. 21, 2011) (Cooke, J.) (finding that a claim of conversion for money in a bank account was proper where plaintiffs placed a certain amount of money into account and defendant later refused to return that money to plaintiffs).

A contract between parties will also not preclude a civil theft claim where the contract is merely incidental to the defendants' alleged criminal acts. *See Nova Flight Ctr., Inc. v. Viega*, 554 So. 2d 626, 627 (Fla. 5th DCA 1989) (subtenants to a lease agreement stole plaintiff's electricity, avionics, and engine parts); *Russo v. Heil Const., Inc.*, 549 So. 2d 676, 677 (Fla. 5th DCA 1989) (contractor stole doors which it had previously installed in a buyer's house). In those cases, the mere fact that a contract existed between the parties did not permit the defendants to escape liability for a civil theft claim. However, if the contractual relationship between the parties plainly encompasses the conduct and property that is the basis for the alleged theft, then the civil theft claim must be dismissed. *See Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1573 (S.D. Fla. 1993) (Marcus, J.).

Here, the property that is the subject of Plaintiff's civil theft claim, Plaintiff's money paid for the purchase of Super Bowl tickets, is the same property that is the subject of the parties' oral agreement, pursuant to which Plaintiff agreed to pay money to Defendants for

Super Bowl tickets. The undersigned finds that the allegations in the Complaint do not demonstrate "an intricate sophisticated scheme of deceit and theft" by Defendants. *See Epoch Int'l Partners*, 587 F. Supp at 1221.

Plaintiff does not allege that Defendants have stolen or embezzled funds which were entrusted to them by Plaintiff or that Plaintiff entrusted Defendants to temporarily hold funds in a segregated and identifiable account which Defendants then refused to return. Nor, as explained above, was the oral agreement between the parties "merely incidental" to Defendants' alleged wrongdoing but, instead, involved the same property and conduct that is the subject of the civil theft claim. The allegations in Plaintiff's Complaint are similar to those in *Epoch Partners*, in which the defendant failed to refund to the plaintiff its payment for N95 masks it never received. 587 F. Supp. 3d at 1217. In *Epoch Partners*, the court dismissed the plaintiff's civil theft claim on the grounds the complaint failed to allege that defendant stole or embezzled money, despite its numerous allegations concerning Defendants' unfulfilled promises to issue the refund. *Id.* at 1221. Like the complaint in *Epoch Partners*, the Complaint here includes numerous allegations regarding Defendants' problematic conduct, but those allegations do not rise to the level of an intricate sophisticated scheme of deceit and theft sufficient to survive dismissal. Moreover, unlike in *Epoch Partners*, Defendants here partially performed under the agreement by supplying the majority of the requested tickets, further diminishing Plaintiff's claim that Defendants intended to steal Plaintiff's money. Compl. at ¶ 31.

Therefore, the undersigned finds that the Complaint fails to allege that Defendants' conduct at issue in the civil theft claim goes beyond and is independent of their obligations under the parties' oral contract.

For the foregoing reasons, the undersigned recommends that Count III of the Complaint be dismissed.

## VI.   CONCLUSION

For the reasons set forth above, the undersigned finds that Defendants' Motion to Dismiss should be granted on the following grounds: Counts I fails to allege damages resulting from Defendants' alleged fraudulent inducement separate and distinct from damages sustained as the result of a breach of the parties' agreement; Count II fails to satisfy the pleading requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure, fails to allege that Plaintiff lacks an adequate remedy at law, and fails to allege that the unjust enrichment claim is pled in the alternative to other claims for relief; and, Count III fails to allege that Defendants' conduct and the property at issue are separate and distinct from the conduct and property at issue in the parties' oral agreement.

## VII.   RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Defendants' Motion to Dismiss Complaint [ECF No. 7] be **GRANTED** and the Complaint be dismissed without prejudice.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the

interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY SUBMITTED** in Chambers at Miami Florida, this  6ᵗʰ  day of January, 2023.


                                 _____

                                 MELISSA DAMIAN
                                 UNITED STATES MAGISTRATE JUDGE

cc:    Hon. James Lawrence King
       Counsel of Record